**ARMCO, INC., Plaintiff-Appellant,**

v.

**SOUTHERN ROCK, INC., Lester Engineering Company, Inc. and Horace B. Lester, Defendants-Appellees.**

No. 81–4442.

United States Court of Appeals, Fifth Circuit.

Jan. 31, 1983.

---

P.N. Harkins, III, John L. Low, IV, Jackson, Miss., for plaintiff-appellant.

Thomas W. Prewitt, Walter G. Watkins, Jr., Jackson, Miss., for Southern Rock, Inc.

E. Clark Rumfelt, J. Jerry Langford, Jackson, Miss., for Lesters.

Heber Ladner, Jackson, Miss., for Associated Constructors, Inc.

Before CLARK, Chief Judge, RUBIN and WILLIAMS, Circuit Judges.

CLARK, Chief Judge:

This case involves the consequences of leaks that developed in pipe installed in the new sewer system in Richland, Mississippi.

After the problem surfaced, Armco, Inc., the manufacturer of the pipe, funded substantially all of the necessary repairs, which were performed by Associated Contractors, one of the installing contractors. During the repair period, Armco conducted extensive testing of its product and ultimately concluded that faulty installation, not defective pipe, was the sole cause of the system's failure. It then filed this suit against Associated, Southern Rock, the other installing contractor, and Lester Engineering Company, the project engineer. After Armco and Associated settled their differences, Lester and Southern Rock filed a motion for summary judgment. They argued that Armco had acted as a volunteer in financing the repairs and therefore was not entitled to recovery. The district court agreed and granted the motion. We affirm.

I

In the early 1960's plans were laid for the construction of a sewer system to serve Richland and surrounding areas. Richland employed Lester as the consulting engineer for the project. The work was divided into three segments, and bids were taken. Southern Rock was hired to build one segment and Associated the other two. Southern Rock later subcontracted part of its contract to Associated. The pipe used by both was manufactured by Armco.

Work finally began on the system in 1976. In the fall of 1978, when the project was nearing completion, leaks in the sewer lines were detected. Within several months Armco and Associated reached an agreement on repairs for the system. Their contract required Armco to pay 60% of the costs incurred and furnish new pipe. Associated was to pay 40%. Later, apparently as a result of Associated's financial distress, Armco's share increased to nearly 100%.

When the pipe failures first came to light, there was, not surprisingly, a great deal of finger-pointing and disclaiming of fault. Actually, none of the parties knew what the cause of the failure was—whether

defective pipe, faulty installation, or a combination of the two was the culprit. This was true when the Armco/Associated repair contract was formed and for a significant period thereafter.

During the repair period Armco conducted an extensive investigation in an attempt to pinpoint the cause of the leaks. After reviewing early reports Armco officials began to suspect that their pipe was blameless. Nevertheless the payments continued, apparently because the officials were concerned that discontinuing repairs and commencing litigation would adversely affect their share of a potentially valuable pipe market.

Finally, in May of 1980 the testing was completed. Armco concluded that its pipe was entirely without fault and that poor installation was the sole cause of the problem. After making one more payment pursuant to its agreement with Associated, on July 29, 1980, Armco filed suit.

Four months later Armco settled its claim against Associated by paying Associated $408,500 for performance of repairs and Richland $125,000 for liquidated damages that were provided for in the city's contracts with Associated and Southern Rock. Southern Rock and Associated then secured a release from Richland for all claims it might have against them as a result of faulty installation. Armco was a party to this agreement, which provided that its terms did not affect the rights of any party to the lawsuit.

On January 28, 1981, Armco made a final payment to Associated of $34,581.47, raising its total expenditures for repairs to over $1.6 million. This is the amount Armco seeks to recover.

## II

The sole question for our review is whether Armco acted as a volunteer under Mississippi law in financing the sewer repairs. Because the district court granted summary judgment, the specific issue presented by this appeal is whether there is any genuine issue of material fact about Armco's volunteer status. *See* Fed.R.Civ.P. 56(c).

■ The parties do not quibble about the applicable law. They agree that in Mississippi "a voluntary payment can not be recovered back, and a voluntary payment within the meaning of this rule is a payment made without compulsion, fraud, [or] mistake of fact ...." *McDaniel Bros. Const. Co. v. Burk-Hallman Co.,* 253 Miss. 417, 175 So.2d 603, 605 (1965) (citing *McLean v. Love,* 172 Miss. 168, 157 So. 361 (1934)). *See also Alabama Great Southern Railroad Co. v. Allied Chemical Corp.,* 501 F.2d 94 (1974), *rehearing en banc,* 509 F.2d 539 (5th Cir.1975) (adopting the panel opinion).

Nor is there a major bone to pick regarding the material facts. Although the parties seek to focus our attention on different aspects of the case, they have reached common ground on the following details.

When the majority of the payments were made, Armco did not know the real cause of the leaky pipes. Armco officials suspected their pipe might be at fault; they also suspected that poor installation was the cause. Additionally, and more importantly, the officials knew they didn't know what the real cause was and that a final conclusion would have to await the test results.

■ The dispute in this case lies with the application of the volunteer rule—specifically the mistake of fact exception—to these facts. Armco contends that its lack of awareness of all the relevant facts is a mistake of fact under the *McDaniel* rule. Lester and Southern Rock answer that Armco may have been ignorant, but it made no mistake. This case thus boils down to one question: Did Armco's ignorance of some of the facts amount to a mistake of fact?

The mistake of fact exception to the volunteer rule is in effect only a specific application of the mistake of fact doctrine in contract law. Therefore, we turn to contract law as a guide in determining whether Armco's ignorance amounts to a mistake of fact.

The Restatement (Second) of Contracts § 153 provides that a party who enters a contract based on a material mistake may

avoid the contract "if he does not bear the risk of the mistake under the rule stated in § 154 ...." Section 154 in turn provides that "[a] party bears the risk of a mistake when ... (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient ...." Comment c to § 154 explains this principle:

> c. *Conscious ignorance.* Even though the mistaken party did not agree to bear the risk, he may have been aware when he made the contract that his knowledge with respect to the facts to which the mistake related was limited. If he was not only so aware that his knowledge was limited but undertook to perform in the face of that awareness, he bears the risk of the mistake. It is sometimes said in such a situation that, in a sense, there was not mistake but "conscious ignorance."

The facts here precisely fit § 154(b) and comment c. Armco's officials were consciously ignorant of the facts necessary to a determination of who was liable for the sewer repairs. Yet they undertook voluntarily to finance them. Under these circumstances there was no mistake of fact. *See Hunt v. Davis,* 208 Miss. 710, 45 So.2d 350 (1950) (the mistake of fact doctrine operates only where the party could not have ascertained the real facts by reasonable diligence). We hold that the volunteer rule was properly applied by the district court.

### III

A basic tenet of contract law is that courts should honor voluntary arrangements. This concern lies at the heart of the rule that voluntary payments cannot be recouped in the absence of fraud, compulsion, or mistake of fact. *See McDaniel Bros. Const. Co. v. Buck-Hallman Co.,* 175 So.2d at 605. Our holding fosters this vital concern.

Armco would equate uncertainty about the facts with mistake of fact. Under this erroneous view any voluntary settlement reached before culmination of a complete investigation could be judicially undone. This would undermine the volunteer rule and the principle of finality of obligations underlying it. The Restatement's rule that conscious ignorance is not a mistake of fact is sound. The decision of the district court is

AFFIRMED.