ARMCO, INC., Plaintiff-Third-Party
Defendant-Appellee,

v.

SOUTHERN ROCK, INC.,
Defendant-Third-Party
Plaintiff-Appellant.

No. 85–4018
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 26, 1985.

David L. Reynolds, Jackson, Miss., for
defendant-third-party plaintiff-appellant.

Watkins & Eager, P.N. Harkins, III, John L. Low, IV, Jackson, Miss., for plaintiff-third-party defendant-appellee.

Before POLITZ, GARWOOD and E. GRADY JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Appellee Armco, Inc. (Armco) brought this diversity suit for declaratory judgment and damages against appellant Southern Rock, Inc. (Southern Rock) and Associated Contractors, Inc. (Associated), the two contractors who installed for the town of Richland, Mississippi, sewer pipe manufactured by and acquired from Armco, and Lester Engineering Company (Lester), the project engineer on the job, to determine fault in a dispute over malfunctioning of the sewer lines. Southern Rock filed a counterclaim against Armco for damages for breach of warranty respecting the pipe. Armco settled with Associated, and subsequently Armco's claims against Southern Rock and Lester were dismissed on summary judgment, which was affirmed by this Court. *Armco, Inc. v. Southern Rock, Inc.*, 696 F.2d 410 (5th Cir.1983). Southern Rock then added an additional counterclaim for malicious prosecution. In the subsequent trial of Southern Rock's suit against Armco, the district court refused to submit the malicious prosecution claim to the jury, in effect granting Armco's motion for directed verdict on that claim. The jury found for Armco on Southern Rock's warranty related claims, and judgment was rendered dismissing Southern Rock's suit. Southern Rock now appeals, claiming (1) that it was entitled to a directed verdict on its malicious prosecution claim, or, in the alternative, was entitled to have that claim submitted to the jury; (2) that it was entitled to a directed verdict on liability as to at least a portion of its warranty action; (3) that Armco was wrongfully allowed to cross-examine John Rushing, president of Southern Rock, about other legal claims;

and (4) that the district court's instruction to the jury describing the legal effect of this Court's prior decision was incomplete. We affirm.

### Facts and Proceedings Below

In the early 1960's, plans were formulated to construct a sewer system for Richland, a suburb of Jackson, Mississippi. Richland subsequently employed Lester as its project engineer. The work was divided into three segments and bids were invited. Southern Rock was awarded the contract for one of these segments, and Associated was awarded the other two. Southern Rock subsequently subcontracted part of its segment to Associated.

Construction began in 1976. Southern Rock and Associated each decided to use Armco "truss" pipe. Southern Rock had by June of 1978 laid all of the pipe it was supposed to install, and after a preliminary clean out of the pipes no pipe failures were noted. As the project neared completion in the fall of 1978, however, leaks and other disorders began to appear. Armco initially suspected that pipe defects were the cause of the problems with the pipe Associated had installed. Armco and Associated subsequently reached an agreement as to how to provisionally pay for the pipe repairs between themselves, with Armco paying 60 percent of the repair costs and the entire cost of the new pipe, and Associated paying 40 percent of the repair costs. When Associated later fell into severe financial difficulties, Armco's percentage of the total cost of the repairs it paid, including the cost of the pipe, neared 100 percent.

At the time of the provisional accord between Armco and Associated, it was not clear exactly who was at fault, and there was much finger-pointing. Armco soon began extensive investigations in order to pinpoint the exact cause of the leaks. After the investigation was completed, Armco eventually concluded that its pipe was blameless and that faulty installation was the sole cause for the pipe's inadequate performance. Specifically, Armco found that its pipe failed in three modes, all of which were due, it concluded, to faulty

contractor performance. First, Armco concluded that the "flattened inverts" (a pipe flattened out at its lowest point) were caused by the contractor's failure to place the recommended type and amount of backfill under the bottom and sides of the pipe. Second, Armco concluded that the "lumps and bumps" on or near the bottom of the pipe were due to the contractor's laying the pipe on hard clods of dirt and not providing adequate support. And last, Armco concluded that the "excessive deflection" of the pipe, in which the sides began to "overflex, collapse, and leak" because of extreme weight and pressure, was caused by inadequate backfill and compaction along the sides of the pipe. For its part, Southern Rock contends that the pipe, when repaired, worked only when it was installed in an envelope of gravel, specifications not a part of the original contract.

Armco finished its testing in May 1980 and found its pipe blameless. Shortly thereafter, on July 29, 1980, Armco filed suit for declaratory relief and damages against Associated, Southern Rock, and Lester. Armco specifically sought reimbursement of the money which it had previously spent in repairing the pipe. Pursuant to its earlier accord with Associated, on January 28, 1981, Armco made a final payment to Associated of $34,581.47, raising its total expenditures for repairs to over $1.6 million, and Armco sought this amount. Recovery from each defendant was sought "for that portion of the [sums expended by Armco] ... which the Court finds to be attributable to the wrongful conduct of" each particular defendant. Armco and Associated then settled their differences.

The district court, on motion for summary judgment, dismissed Armco's suit against Southern Rock and Lester. The court held that Armco could not recover from Southern Rock or Lester the amounts it had previously paid out because under Mississippi law Armco had legally "volunteered" the payments. We affirmed, holding that "conscious ignorance of the facts necessary to decide who was liable for the sewer repairs" was no ground for

exception from the rule that one who makes voluntary payment cannot seek indemnification therefor. *Armco, Inc. v. Southern Rock, Inc.*, 696 F.2d at 413. However, neither our opinion nor the district court's grant of summary judgment determined who was at fault with respect to the malfunctioning of the sewer lines.

After the filing of Armco's original suit, Southern Rock counterclaimed for $500,-000, of which $186,000 was claimed as actual repair expenses, and the remainder as delay damages. After our affirmance of the district court's summary judgment against Armco, Southern Rock added a counterclaim for malicious prosecution. A jury trial was subsequently held. The district court, in effect granting Armco's motion for directed verdict on that claim made at the close of all the evidence, declined to submit the malicious prosecution claim to the jury. The jury was instructed, however, on Southern Rock's breach of warranty and related claims. A general verdict was returned in favor of Armco, Southern Rock brings this appeal from the judgment dismissing its suit.

### Discussion

*Malicious Prosecution*

Southern Rock's first contention is that the district court below erred in denying its motion for a directed verdict, and in granting Armco's motion, on the malicious prosecution claim. We first observe that under Mississippi law, which concededly governs this diversity action, the requirements for a successful claim of malicious prosecution are:

> "(1) The institution or continuation of original judicial proceedings, either criminal or civil ... [here the proceeding is civil]; (2) by, or at the instance of the defendants; (3) the termination of such proceeding in plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceedings; and (6) the suffering of damages as a result of the action or prosecution complained of." *Harvill v. Tabor*, 240 Miss. 750, 128 So.2d 863, 864 (1961)

This action exists to promote "freedom from unjustifiable and unreasonable litigation." 1 F. Harper and F. James, *The Law of Torts* § 4.2 at 301 (1956).

■ We hold that Southern Rock failed to establish its malicious prosecution claim against Armco because it did not show that Armco's initial suit against it lacked probable cause, a prerequisite to recovery. *See Harvill*, 128 So.2d at 864. In *Harvill*, the Mississippi Supreme Court stated that for probable cause to exist in a malicious prosecution claim "there must be a concurrence of (1) an honest belief in the guilt of the person accused, and (2) reasonable grounds for such belief." *Id.* at 865. *Harvill*, as the opinion makes clear, was concerned with a previous criminal prosecution. However, if the initial wrongful proceeding is civil, as here, the standards for probable cause are more flexible, for the initial suit can be based on facts whose "existence is not certain but [which] he [the initial claimant] believes that he can establish ... to the satisfaction of court and jury." *Restatement (Second) of Torts* § 675 comment d (1976). The *Restatement* further explains:

> "In a word, the initiator of private civil proceedings need not have the same degree of certainty as to the relevant facts that is required of a private prosecutor

of criminal proceedings. In many cases civil proceedings, to be effective, must be begun before all of the relevant facts can be ascertained to a reasonable degree of certainty." *Id.*

Essentially the same rule is stated in *Prosser and Keeton on The Law of Torts* § 120 at 893 (5th ed.) (1984). Although we have found no Mississippi cases speaking directly to the point, we believe Mississippi would follow this rule.

We further observe that the Mississippi Supreme Court has stated that on undisputed facts "it is the function of the court to determine whether or not probable cause existed." *Owens v. Kroger*, 430 So.2d 843, 846 (Miss.1983). Insofar as this may involve a procedural question, so that federal law is controlling even in a diversity case, we note that this also appears to be the general common law rule applied by federal courts.[1]

Moreover, under Mississippi jurisprudence "actions for malicious prosecution are regarded by law with jealousy and they ought not to be favored." *State, Use and Benefit of Foster v. Turner*, 319 So.2d 233, 235 (Miss.1975).

Accordingly, since Armco's motion for directed verdict has effectively been granted, we review the record under the stan-

---

1. *See Restatement (Second) of Torts* § 673(1)(c) & 2(a) & comment e; § 681B(1)(c) & 2(a), noting that whether, on a given set of facts, probable cause exists is a question to be determined by the court in malicious prosecution cases, as distinguished from the somewhat broader role of the jury in determining whether particular conduct, in a certain set of circumstances, constitutes negligence. To the same effect, *see Stewart v. Sonneborn*, 98 U.S. (8 Otto) 187, 25 L.Ed. 116, 119 (1879); *Nesmith v. Alford*, 318 F.2d 110, 122 n. 17 (5th Cir.1963), *cert. denied*, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964). *See also Campbell v. Yellow Cab Co.*, 137 F.2d 918, 922 (3d Cir.1943); *Wolter v. Safeway Stores*, 153 F.2d 641, 642 (D.C.Cir.), *cert. denied*, 329 U.S. 747, 67 S.Ct. 64, 91 L.Ed. 644 (1946); *Thomas v. E.J. Korvette, Inc.*, 476 F.2d 471, 475, 479–81 (3d Cir.1973). As the Eighth Circuit said in *Hernon v. Revere Copper & Brass, Inc.*, 494 F.2d 705, 707 (8th Cir.), *cert. denied*, 419 U.S. 867, 95 S.Ct. 124, 42 L.Ed.2d 105 (1974), sustaining a judgment n.o.v. for the defendant in a malicious prosecution case on the

ground that there was no want of probable cause:

> "Unlike other tort actions the rule in malicious prosecution cases appears to be that the court determines the reasonableness of conduct. This rule is almost universally accepted in the cases....
>
> "... [W]ere probable cause left to the jury the rights of defendants might not be sufficiently safeguarded and the bringing of complaints would be discouraged.... [T]he general rule is that suits for malicious prosecution are viewed with disfavor and are to be carefully guarded against.... [M]alicious prosecution cases present situations difficult for the jury to distinguish. There is a constant interplay between the original lawsuit and the malicious prosecution suit.... This difficulty coupled with the reluctance of the courts to have potential plaintiffs feel a chilling effect from a possible counter lawsuit sheds some light upon the reason for the development of this rule."

dard of *Boeing v. Shipman*, 411 F.2d 365, 373 (5th Cir.1969), to determine the historical facts most favorable to Southern Rock which the jury could reasonably have found from the evidence. We then determine whether those facts suffice to establish a want of probable cause on Armco's part to initiate its civil suit against Southern Rock for purposes of liability for malicious prosecution. We hold that Southern Rock has not made out a case of want of probable cause.

In our opinion on the prior appeal, we noted that "[w]hen the pipe failures first came to light, there was, not surprisingly, a great deal of finger-pointing and disclaiming of fault," *Armco*, 696 F.2d at 411, and that only after its testing, during which Armco concluded that its pipe was sound, did Armco sue. On the factual merits concerning the relative fault of the parties, Armco's action in bringing suit was not without probable cause. Armco at the least believed that Southern Rock and/or Associated may have been at fault when Armco decided to sue, and this belief, we find, as apparently did the jury below, was not wholly unreasonable. Since the first suit here was a routine civil case, not involving any extraordinary remedies or any attempt to relitigate previously decided matters, we apply a more lenient probable cause standard than that which might be called for were the initial proceeding criminal.

We next inquire into whether Armco's suit lacked probable cause because it knew it would eventually lose to Southern Rock because of Armco's status as a "volunteer." We hold not. We find Armco's contention in the earlier suit that under Mississippi law its conscious ignorance was a "mistake of fact," making inapplicable the "volunteer" rule, not plainly unreasonable despite our ultimate rejection of it. *Armco*, 696 F.2d at 412–13.[2] Indeed, Southern Rock does not even claim that Armco's earlier argument is devoid of mer-

it, or that Armco knew it to be so; it argues only that *as to actual fault respecting the pipe* Armco's suit was without probable cause. We have rejected this contention.

Armco's suit was for declaratory relief and monetary damages. Declaratory relief is particularly well suited for situations that have evolved to a point of inevitable or imminent litigation. 10A C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure* § 2757 (1983). The situation here, where all parties held divergent notions on who should bear the financial consequences of the pipe's nonperformance, had decidedly reached that stage. We observe that declaratory relief is appropriate for situations where there is an "actual controversy that had not reached the stage at which either party may seek a coercive remedy and in cases where a party who may sue for coercive relief has not done so." *Id.* at § 2751. Consequently, even if this suit were "defensive" as Southern Rock claims, that is not an inappropriate purpose for a declaratory judgment action. *See id.* at § 2757. Since declaratory relief is aimed at situations like the one facing the several parties to this sewer line dispute, we cannot find that Armco, in trying to define the relative responsibilities and liabilities of those involved, lacked probable cause in seeking declaratory judgment against Southern Rock as well as Associated and Lester.

We further hold that Southern Rock failed to show that Armco's suit was brought with malice, another prerequisite to recovery under malicious prosecution. The malice requirement may be satisfied by a sinister or improper purpose, such as using criminal proceedings to collect a debt, *see, e.g., Fowler v. King*, 254 Miss. 61, 179 So.2d 800 (1965); *Harvill*, 128 So.2d at 864–65, or malice may be inferred from a palpable lack of probable cause, *see, e.g., Harvill*, 128 So.2d 864–65; *Winters v.*

---

**2.** The fact that Southern Rock prevailed on this aspect of the matter is not evidence that Armco's suit was without probable cause. *See Restatement (Second) of Torts* § 675, comment b

(1976) ("a termination of civil proceedings by a competent tribunal adverse to the person initiating them is not evidence that they were brought without probable cause").

*Griffis,* 233 Miss. 102, 101 So.2d 346, 348 (1958). As to the former type of malice, Southern Rock claims the suit by Armco was merely defensive and lodged to obtain a settlement with Southern Rock. As we have noted, however, the situation was an appropriate one for declaratory relief. If Armco was seeking a settlement, it was a settlement of the very controversy in suit, not of some controversy as to which the suit was not relevant. In a civil suit a plaintiff is always seeking his own ends. For this reason, more latitude is generally permitted respecting motivation in the bringing of civil suits for purposes of the malice issue in malicious prosecution cases. *See Prosser and Keeton on The Law of Torts* § 120 at 894–95 (5th ed.) (1984). As to the latter type of malice, we have held that Armco's suit was not shown to lack probable cause, so the inference mentioned cannot be made. Moreover, it is significant that other than labeling Armco's suit as defensive, appellant has alleged no other motive or purpose that could be deemed "malicious." · Since the probable cause inference is not available, we must conclude that the evidence is insufficient to support a finding that Armco's suit was malicious.

We hold that the district court did not err either in refusing appellant's motion for directed verdict on its malicious prosecution claim or in refusing to submit that claim to the jury.

*Warranty Related Claims*

■ Southern Rock's second contention is that it was entitled to a directed verdict on its warranty related claims because James Morris, a "disinterested witness," gave uncontradicted testimony to the effect that defects in the pipe supplied by Armco made it necessary for Southern Rock to completely relay two hundred feet of pipe. For this proposition, Southern Rock relies extensively on *Walton v. Owens,* 244 F.2d 383, 387 (5th Cir.1957), which held that "evidence intrinsically persuasive coming from disinterested witnesses of unimpeached reliability reciting facts contemporaneously observed from an ideal vantage point, nowhere contradicted ... bind[s] ...

court and jury alike...." However, it is clear that Southern Rock has failed to meet the prerequisites set forth in *Walton,* and we reject its contentions in this respect.

The facts in *Walton* suggest that its implications are considerably more narrow than Southern Rock contends. In *Walton,* for instance, two witnesses completely unrelated to anyone involved in the accident or the subsequent lawsuit gave uncontradicted testimony as to specific, concrete facts they personally had directly observed. Here, Morris, the "disinterested witness," had been employed by Southern Rock for six years. Indeed, it was Morris who was the superintendent for Southern Rock on the very project in suit, and it was he who bore responsibility for the proper installation of the pipe. Moreover, the testimony presented by Armco did in fact contradict that presented by Morris. For instance, Elton Turnipseed, an Armco corporate representative, testified that he had talked with appellant's president, Rushing, about the two hundred feet of pipe in question and that Rushing had admitted fault in the construction of the line. Finally, Morris' testimony consisted in large part of his opinions or conclusions. It is settled that "such testimony is ordinarily not conclusive even where it is uncontradicted." *Mims v. United States,* 375 F.2d 135, 140 (5th Cir. 1967). *See also, e.g., Pittman v. Gilmore,* 556 F.2d 1259, 1261 (5th Cir.1977); *Price v. Admiral Corp.,* 527 F.2d 412 (5th Cir. 1976).

The evidence by no means conclusively establishes that Armco's pipe was faulty. Southern Rock was not entitled to a directed verdict on its warranty claims.

*Other Disputed Testimony*

■ Southern Rock also contends that Armco should not have been allowed to examine Rushing, Southern Rock's founder and president, about other claims and lawsuits involving Southern Rock which concerned this particular construction project. Southern Rock maintains that this evidence was irrelevant to any material issue and was highly prejudicial to it. We disagree. The matters inquired about were, at least

in the main, relevant to appellant's claims of delay damages and that it lost bonding capacity as a result of Armco's suit.[3] Accordingly, considering the record as a whole, and given the trial court's wide discretion with respect to the scope of cross-examination, particularly of a party principal such as Rushing, and the latitude implicit in Fed.R.Evid. 608(b), we are unable to conclude that this complaint presents reversible error.

*Instruction Concerning Opinion on Prior Appeal*

■ Southern Rock's final contention is that the district court erred in its instructions to the jury concerning our ruling on the prior appeal.[4] Specifically, Southern Rock complains of the refusal of its requested instruction that this Court had determined that "none of the payments made by Armco for repair of the pipe were made because of compulsion, fraud or mistake of fact."[5] Southern Rock complains that the instruction given failed to adequately inform the jury of this Court's holding. We do not agree.

Our earlier decision was not rooted in any determination of fault respecting the pipe malfunctions, but in the legal prerequisites of volunteer payor status. *See Armco*, 696 F.2d at 412 ("The sole question for our review is whether Armco acted as a volunteer under Mississippi law in financing the sewer repairs."). It is true, as Southern Rock contends, that "a voluntary payment can not be recovered back, and a voluntary payment within the meaning of this rule is a payment made without compulsion, fraud, [or] mistake of fact...." *Id.* (quoting *McDaniel Brothers Construction Company v. Burk Hallman Company*, 253 Miss. 417, 175 So.2d 603, 605 (1965)). However, since no party claimed in the jury trial below that there was compulsion, fraud or a mistake of fact in the Armco payments, we must conclude that these concepts were not there at issue. Appellant points to no error in the instruction as given by the district court, nor to any specific need for further instruction on the subject. In these circumstances, we have long held that whether further instructions are appropriate is a matter committed to the sound discretion of the district court. *See, e.g., Robert v. Conti Carriers & Terminals, Inc.*, 692 F.2d 22, 24 (5th Cir.1982); *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 425 (5th Cir.1985). It is apparent that the instruction requested by appellant had the potential of leading the jury to infer that *we* had determined that Armco made the payments with knowledge of who was at fault in respect to the pipe malfunctions, and hence, inferentially, admitted its fault. However, in our previous decision we recognized that Armco was in "conscious ignorance" of the facts when it made the payments in question. *Armco,*

---

3. For example, Rushing was questioned about appellant's claim to the City of Richland asserting that it was responsible for delay in the project; Rushing was also questioned about other lawsuits to which appellant was a party involving the project. The cross-examination also had possible relevance to appellant's claim that Armco's suit was malicious, in that it tended to suggest that litigation would be necessary to resolve the differences between Armco and Southern Rock.

4. The district court instructed the jury as follows:
    "The Court instructs the jury that the earlier suit which Armco filed against Southern Rock and others was dismissed upon a finding by the Court that Armco voluntarily paid out the money which it sought to recover by that suit. The dismissal of that suit was based on legal grounds. In dismissing Armco's suit, the

Court did not reach or consider the question of what caused the pipe failures in the sewer system constructed for the Richland Water and Sewer District. The question of the cause of those failures is to be determined by you by a preponderance of the credible evidence in this case."

5. In response to Southern Rock's objection to the district court's instruction, the court replied:
    "THE COURT: The Court considered this earlier. The Fifth Circuit, in the opinion rendered earlier in this case, did use the words 'compulsion, fraud, or mistake of fact.' Those are quoted out of a Mississippi Supreme Court case. They are considered by this Court to be abstract legal terms which, when used in the context of instructing this jury, would be confusing to this jury; and accordingly, that instruction has been refused."

696 F.2d at 413. Appellant's requested instruction was potentially misleading, as it did not touch upon conscious ignorance. Nor was the district court obliged to attempt to explain to the jury the somewhat subtle difference between conscious ignorance and mistake as it bore on our prior decision. The instruction given was even-handed, correct, and adequate. Southern Rock's complaint in this respect presents no reversible error.

### Conclusion

Having rejected each of Southern Rock's contentions, we affirm the judgment of the district court.

AFFIRMED.