**TRILOGY COMMUNICATIONS, INC., Plaintiff,**

v.

**TIMES FIBER COMMUNICATIONS, INC. and LPL Technologies, Inc., Defendants.**

**No. Civ.A. 3:91–CV–542WS.**

United States District Court, S.D. Mississippi, Jackson Division.

May 29, 1998.

Peter Larkin Doran, Thomas Calvin Wells, Wells, Moore, Simmons & Hubbard, Jackson, MS, Joseph V. Colainni, Laurence Evan Stein, Hung Trong T. Than, Pennie & Edmonds, Washington, DC, Thomas A. Canova, Brian Douglas Siff, Pennie & Edmonds, New York City, Michael Farrell, The Kullman Firm, Jackson, MS, George C. Summerfield, Jr., Radar, Fishman & Grauer, Bloomfield Hills, MI, for Trilogy Communications, Inc., plaintiff.

John C. Henegan, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, J. Cal Mayo, Jr., Mayo, McDavid, PLLC, Oxford, MS, for Times Fiber Communications, Inc., LPL Technologies, Inc., defendants.

### MEMORANDUM OPINION AND ORDER

WINGATE, J.

Before the court is the motion of the plaintiff Trilogy Communications, Inc., (hereinafter "Trilogy") for judgment as a matter of law with regard to the defendants' state law counterclaims of malicious prosecution and unfair competition. Brought on day two in a jury trial between the parties, after defendants had rested on their case-in-chief, Trilogy's motion is governed by Rule 50[1] of the Federal Rules of Civil Procedure. Trilogy argues that judgment as a matter of law is appropriate in the instant case because the evidence presented by Times Fiber Communications, Inc., and LPL Communications, Inc., (hereinafter the "defendants"), even after viewing all reasonable inferences in the light most favorable to the defendants, is so strongly in favor of Trilogy that a rational jury could not arrive at a contrary verdict. *See London v. MAC Corporation of America,* 44 F.3d 316, 318 (5th Cir.), *cert. denied,* 516 U.S. 829, 116 S.Ct. 99, 133 L.Ed.2d 53 (1995). Of course, if there is substantial evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion, then this court would be compelled to deny Trilogy's motion. *Id.* However, this court has heard the defendants' arguments in support of their counterclaims and is persuaded that judgment as a matter of law is appropriate in the instant case.

### BACKGROUND

This lawsuit originally was brought by Trilogy pursuant to Title 35 U.S.C. §§ 271, 281, and 283 – 285, accusing the defendants of patent infringement.[2] This court's jurisdiction over the patent dispute was based on Title 28 U.S.C. §§ 1338(a)

---

**1.** Rule 50(a)(1) provides that "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue."

**2.** Liability for infringement is governed by Title 35 U.S.C. § 271, which states that "whoever without authority makes, uses or sells any patented invention ... infringes the patent." Section 281 provides that "[a] patentee shall have remedy by civil action for infringement of his patent." Section 283 provides for injunctive relief to prevent violation of any right secured by patent. Sections 284 and 285 provide respectively for damages and attorney fees.

(district courts have original jurisdiction of any civil action arising under any Act of Congress relating to patents), 1391(c), and 1400(b) (permitting civil actions for infringement to be brought in the federal district where the defendant has sufficient contacts or has committed acts of infringement).

This core patent infringement dispute between the parties erupted over the manufacturing processes associated with coaxial cable.[3] The manufacturing processes in question were two methods of causing a protective metal sheath to adhere to foam insulation which is formed around a metal core capable of transmitting telephone and television signals. According to the defendants, Trilogy's method of making coaxial cable involved melting a core layer of foam insulation at least along its surface in order to cause it to adhere to the inside wall of the protective metal sheath, thereby creating a strong bond between the foam and the metal sheath which would not leak. This result was referred to as "fusion-bonding."[4] Defendants contend that the method they used to bind the metal sheath to the core layer of foam was different because it involved an adhesive material which is heated just enough to cause the foam and the metal sheath to bind with one another. The difference, argued the defendants, was that the foam insulation in the defendants' cable was not melted as it was in Trilogy's cable.

After Trilogy filed the instant patent infringement lawsuit, the defendants filed counterclaims of malicious prosecution and unfair competition which are governed by Mississippi law, moved for summary judgment on the merits of Trilogy's patent infringement claims, and additionally contended that Trilogy's patent claims were barred by the doctrines of either res judi-cata or collateral estoppel. On December 1, 1995, this court entered its Memorandum Opinion and Order granting summary judgment to the defendants on the merits of Trilogy's patent claims. However, this court denied the defendants' motion for summary judgment insofar as it was based on the contention that a North Carolina federal district court's decision in *Trilogy v. Comm Scope Co.*, 754 F.Supp. 468 (W.D.N.C.1990), where virtually all of the patent infringement issues pending before this court in the instant case were resolved by the North Carolina district court against Trilogy, should be viewed as dispositive of those same issues in the lawsuit before this court. The defendants asked this court to regard the patent issues in the instant case to be barred by the doctrines of res judicata and/or collateral estoppel, notwithstanding that *Trilogy v. Comm Scope Co.* later was vacated by the United States Court of Appeals for the Federal Circuit while the case was on appeal because the parties announced to the Federal Circuit that they had settled the case. This court was not persuaded that it could rely on a vacated opinion as providing sufficient foundation for finding that either of the doctrines of issue preclusion urged by the defendants could be applied in the instant case. This court's reasons for rejecting the defendants' arguments in favor of applying the principles of res judicata and/or collateral estoppel are set forth fully in a separate Order.

As previously noted, the defendants also raised the counterclaims of malicious prosecution and unfair competition counterclaims against Trilogy under Mississippi law. These counterclaims were held in abeyance while Trilogy pursued its appeal of this court's findings on the merits of the patent claims to the United States Court of Appeals for the Federal Circuit. The

---

3. A coaxial cable is a transmission line in which one conductor is centered inside and insulated from an outer metal tube that serves as the second conductor. *See* McGraw–Hill, *Dictionary of Scientific and Technical Terms*, p. 372 (4th ed.1989).

4. Trilogy obtained this patent in the course of its business dealings and did not draft the documents relating to the patent-in-suit. The documents themselves do not define the term "fusion-bonding."

Federal Circuit in *Trilogy Communications, Inc. v. Times Fiber Communications, Inc., and LPL Technologies, Inc.,* decided May 8, 1997, agreed with this court's interpretation of the patent documents, affirmed this court's Memorandum Opinion and Order, and remanded the case for final resolution of the defendants' counterclaims.

## RULE 50—JUDGMENT AS A MATTER OF LAW

A jury was selected and trial was conducted on the issues of malicious prosecution and unfair competition. After the defendants had been fully heard on their counterclaims, the jury was directed to withdraw from open court while Trilogy moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. Rule 50 of the Federal Rules of Civil Procedure permits a trial court to grant an opposing party's motion for judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." In such circumstances, the trial court must view the entire trial record in the light most favorable to the nonmovant, drawing reasonable factual inferences in its favor. *Conkling v. Turner,* 18 F.3d 1285, 1300 (5th Cir.1994). The "decision to grant a directed verdict . . . is not a matter of discretion, but a conclusion of law based upon a finding that there is insufficient evidence to create a fact question for the jury." *Id.* at 1300–01, quoting *In re Letterman Brothers Energy Securities Litigation,* 799 F.2d 967, 972 (5th Cir. 1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); and *see Burch v. Coca–Cola Company,* 119 F.3d 305, 313 (5th Cir.1997), citing *Conkling v. Turner.* "If the facts and inferences point so strongly and overwhelmingly in favor of the moving party . . . that reasonable jurors could not have arrived at a contrary verdict," then this court must conclude that the motion should be granted. *See Resolution Trust Corporation v. Cramer,* 6 F.3d 1102, 1109 (5th Cir.1993), citing

*Boeing v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969); *Crist v. Dickson Welding, Inc.,* 957 F.2d 1281, 1285 (5th Cir.), *cert. denied,* 506 U.S. 864, 113 S.Ct. 187, 121 L.Ed.2d 132 (1992). In the instant case, this court finds that the defendants have failed to establish a prima facie case of malicious prosecution or unfair competition sufficient to withstand Trilogy's motion for judgment as a matter of law.

## THE DEFENDANTS' COUNTERCLAIMS

### A. Applicable Law

The defendants' counterclaims of unfair competition and malicious prosecution are Mississippi state law claims, not federal claims. Therefore, pursuant to *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the applicable substantive law for resolving these counterclaims is taken from the forum in which this court sits, the law of the State of Mississippi. *Rittenhouse v. Mabry,* 832 F.2d 1380, 1382 (5th Cir.1987); *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1264 (5th Cir.1983).

Accordingly, this court's jurisdiction over the defendants' counterclaims is predicated on Title 28 U.S.C. § 1367(a) which provides for supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Original jurisdiction in the instant was provided by federal patent law. However, as above-stated, Mississippi law, not federal patent law, governs the resolution of the defendants' malicious prosecution and unfair competition. Thus, to determine whether the defendants at this stage have made out a prima facie case of either malicious prosecution or unfair competition, or both, this court is required to look to Mississippi law, and, of course, *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82

L.Ed. 1188 (1938) commands this court to perform that gaze.

### B. *Malicious Prosecution*

■ The defendants' malicious prosecution and unfair competition counterclaims cases are intertwined with each other. Malicious prosecution has been argued by the defendants more extensively than unfair competition, but, in this court's view, both counterclaims depend particularly upon a showing of malice, as well as whether probable cause to bring this lawsuit was lacking. The elements which Mississippi law requires the defendants to prove in order to present a prima facie case and avoid Trilogy's motion for judgment as a matter of law are amply set out in various cases decided by the Mississippi Supreme Court. These elements are as follows: (1) the institution or continuation of original judicial proceedings either criminal or civil; (2) by or at the insistence of the defendant; (3) the termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceedings; and (6) the suffering of damages as a result of the action or prosecution of which complained. *See Moon v. Condere Corporation,* 690 So.2d 1191, 1194 (Miss.1997), citing *C & C Trucking Co. v. Smith,* 612 So.2d 1092, 1099–1100 (Miss.1992); *Strong v. Nicholson,* 580 So.2d 1288, 1293 (Miss. 1991); *Mississippi Road Supply v. Zurich–American Insurance Co.,* 501 So.2d 412 (Miss.1987); *Royal Oil Company, Inc. v. Wells,* 500 So.2d 439, 442 (Miss.1986); and *Pugh v. Easterling,* 367 So.2d 935, 937 (Miss.1979).

In this lawsuit, certain aspects of the defendants' proof raise no quarrel. No one disputes that Trilogy instituted the patent infringement claims which were the subject of this inquiry. No one disputes that the lawsuit was terminated in favor of the defendants on the patent infringement issue. No one disputes that this lawsuit was prosecuted at the insistence of Trilogy. So elements 1, 2 and 3 of the factors required to be proved by the defendants in

support of their counterclaims are established. What Trilogy attacks in its Rule 50 motion is whether defendants have established a prima facie case on factors (4) and (5): namely that in instituting its lawsuit against defendants, Trilogy lacked probable cause and was motivated by malice.

### 1. *Probable Cause*

■ Probable cause in the context of a malicious prosecution case requires the concurrence of an honest belief in the guilt of the person accused and reasonable grounds for such belief. *Nassar v. Concordia Rod & Gun Club, Inc.,* 682 So.2d 1035, 1042 (Miss.1996), citing *Royal Oil Company, Inc. v. Wells,* 500 So.2d 439, 443 (Miss.1986). One is as essential as the other. *Royal Oil,* 500 So.2d at 443; *see also Harvill v. Tabor,* 240 Miss. 750, 755, 128 So.2d 863 (1961); *Woolfolk v. Tucker,* 485 So.2d 1039 (Miss.1986). More specifically, unfounded suspicion and conjecture are not proper bases for finding probable cause. *Id.* at 1042. Thus, to determine the existence of probable cause, this court must look to: (1) a subjective element, an honest belief in the guilt of the person accused; and (2) an objective element, reasonable grounds for such belief.

■ Probable cause is determined from the facts apparent to the observer when the prosecution is initiated. *Owens v. Kroger Company,* 430 So.2d 843, 846 (Miss. 1983); *see also Mississippi Road Supply Company, Inc. v. Zurich–American Insurance Company,* 501 So.2d 412, 414 (Miss. 1987). In the instant case, the defendants say they have shown that Trilogy had no probable cause to bring this lawsuit for, among other reasons, the following: (1) that Trilogy didn't conduct the appropriate tests; (2) Trilogy was told by Times Fiber that it had no cause of action; (3) a General Cable report on the tests performed did not confirm melting of the foam in the defendants' cable; and (4) that a memo-

randum from one of Trilogy's attorneys[5] suggested further testing in order to determine whether foam actually had melted. So, according to the defendants, Trilogy had enough information to dissuade it from bringing this lawsuit.

 This court disagrees. The defendants' list shows only that Trilogy had been told by the opposing parties to get out of the lawsuit because the tests conducted were inadequate; that Trilogy had a memorandum from one of its attorneys who thought more testing might be useful; and that a General Cable report was inconclusive on the issue of actual foam melting. This court already has disagreed with the defendants in its Order denying Rule 11 sanctions that the evidence supporting the defendants' theory that fusion-bonding involved only the melting of insulation to form a bond with the protective metal tube was so obvious to Trilogy that pursuit of the instant litigation was clearly in bad faith. This court found instead that the defendants, convinced that fusion-bonding required only melting of the foam insulation, urged Trilogy to drop its lawsuit. On the other hand, Trilogy, convinced that fusion-bonding was a concept broad enough to encompass even the use of heated adhesive to melt the foam insulation, pressed on with its lawsuit. As noted in its Order denying sanctions, this court is unable to characterize Trilogy's pursuit of this case as merely spurious, malicious litigation, especially when the term fusion-bonding was not specifically defined in Trilogy's patent-in-suit. Inasmuch as the *Trilogy v. Comm Scope Co.* opinion was vacated, the defendants cannot be heard to argue that the definition of fusion-bonding was clearly established.

Thus, this court is persuaded that Trilogy was possessed of an honest belief in the guilt of the defendants' manufacturing process based on reasonable grounds for such belief, namely, that even the heating of the adhesive could have caused the foam itself

to melt. This court, after hearing all the evidence on the merits, disagreed with Trilogy's theory, but this does not mean that the theory was maliciously pursued.

Furthermore, where, as here, the proceeding is civil rather than criminal, the standards for probable cause under Mississippi law are more flexible. The initial civil lawsuit can be based on facts whose "existence is not certain but which the initial claimant believes that he can establish to the satisfaction of court and jury." *Armco, Inc. v. Southern Rock, Inc.*, 778 F.2d 1134, 1137 (5th Cir.1985), citing Restatement Second of Torts, Section 675, Comment D, 1976. The Fifth Circuit in *Armco*, quoting from the Restatement and Mississippi law, further explained that:

> [i]n a word, the initiator of private civil proceedings need not have the same degree of certainty as to the relevant facts that is required of a private prosecutor of criminal proceedings. In many cases, civil proceedings, to be effective, must be begun before all of the relevant facts can be ascertained to a reasonable degree of certainty." *Id.* Essentially, the same rule is stated in *Prosser and Keaton on the Law, Torts*, Section 120 at 893, Fifth Edition, 1984. Although we have found no Mississippi cases speaking directly to the point, we believe Mississippi would follow this rule. We further observe that the Mississippi Supreme Court has stated that on undisputed facts, "it is the function of the court to determine whether or not probable cause existed." *Owens v. Kroger*, 430 So.2d 843, 846 (Miss.1983).
>
> Moreover, under Mississippi jurisprudence, actions for a malicious prosecution are regarded by law with jealousy and they ought not to be favored. *State for Use and Benefit of Foster v. Turner*, 319 So.2d 233, 235 (Miss.1975).

778 F.2d at 1137.

The *Armco* decision concludes that inasmuch as the "suit here was a routine civil

---

5. The defendants refer to a memorandum written by one of Trilogy's attorneys (the "Hogue" memo) which says that it was Hogue's

understanding that fusion bonding involved the melting of the foam insulation.

case not involving any extraordinary remedies or any attempt to relitigate previously decided matters, we apply a more lenient probable cause standard than that which might be called for were the initial proceeding criminal." *Id.* at 1138.

The defendants 'cite the case of *Judin v. United States and Hewlett–Packard Company,* 110 F.3d 780 (Fed.Cir.1997), which held that the trial court abused its discretion when it determined that Judin and his attorney, before filing their patent infringement complaint, made reasonable inquiry to determine that the complaint was well-grounded in fact. As noted by the Federal Circuit, prior to filing the complaint, Judin and his attorney had observed an accused device from a distance while it was in use at a post office, but neither Judin nor his attorney had attempted to obtain a device from the Postal Service or the manufacturer so that they could more closely observe the device, nor did they make any attempt to dissect or "reverse-engineer" a sample device. In other words, the Federal Circuit found that Judin and his attorney had conducted virtually no investigation in order to determine whether Judin's claims had any foundation. This, said the Federal Circuit, violated Rule 11 governing proceedings before the Court of Federal Claims.

The *Judin* case, this court finds, is not congruent with the instant case on the facts. The *Judin* case stands for the proposition that Rule 11 of the rules governing proceedings before the Court of Federal Claims requires that some investigation on the elements of patent infringement must be indulged in before a plaintiff hauls a defendant into court on a patent infringement charge. In *Judin,* the plaintiffs did not conduct the required investigation and failed even to obtain a sample of the accused device. In contrast, Trilogy obtained a sample of the accused device and conducted tests. While Trilogy may have unsuccessfully pursued its theory of the case due to an optimistic assignment of the breadth of the term fusion-bonding, it did not fail to investigate the case.

Moreover, this court has looked to Mississippi law for any duty Trilogy had to conduct testing beyond what it already had conducted before bringing a complaint which would survive the charges of malicious prosecution and/or unfair competition. In this court's view, Trilogy filed its patent infringement complaint based on its honest belief that heated adhesive would melt foam and that this process constituted fusion-bonding. This basis constitutes sufficient probable cause under Mississippi law.

### 2. *Malice*

In Mississippi, to determine if Trilogy acted with malice, the courts look to subjective state of mind. *Nassar v. Concordia Rod & Gun Club, Inc.,* 682 So.2d 1035, 1042 (Miss.1996), citing *Owens v. Kroger Company,* 430 So.2d 843, 846 (Miss.1983). In an effort to define malice, the Mississippi Supreme Court has said that the term "malice" in the law of malicious prosecution is used in an artificial and legal sense and applied to prosecution instituted primarily for some purpose other than that of bringing an offender to justice. *Benjamin v. Hooper Electronic Supply Co.,* 568 So.2d 1182, 1191 (Miss. 1990); *Royal Oil,* 500 So.2d at 444; *Owens,* 430 So.2d at 846. Malice in the artificial and legal sense does not refer to mean or evil intent as a layman might ordinarily think. The determination of malice is a question of fact to be determined by the jury unless only one conclusion may reasonably be drawn from the evidence. Malice may be and usually is shown by circumstantial evidence. *See Benjamin v. Hooper Electronic Supply,* 568 So.2d at 1191; and *Strong v. Nicholson,* 580 So.2d at 1288–93. Moreover, absence of probable cause for the prosecution is circumstantial evidence of malice. *Royal Oil,* 500 So.2d. at 444; *Winters v. Griffis,* 233 Miss. 102, 101 So.2d 346, 348 (1958); and *Harvill v. Tabor,* 240 Miss. 750, 128 So.2d 863 (1961) (malice can be inferred from a pal-

pable lack of probable cause). The malice requirement may be satisfied by a finding of sinister or improper purpose, such as using criminal proceedings to collect a debt. *Fowler v. King*, 254 Miss. 61, 179 So.2d 800 (Miss.1965); and *Harvill*, 128 So.2d at 864–65. And, malice may be inferred from a finding that the defendant acted in reckless disregard of the other person's rights. *Brown v. United States*, 653 F.2d 196 (5th Cir.1981), *cert. denied* 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982).

"In a civil suit, a plaintiff is always seeking his own ends. For this reason, more latitude is generally permitted respecting motivation in the bringing of civil suits for purposes of the malice issue in malicious prosecution cases." *See Armco, Inc. v. Southern Rock, Inc.*, 778 F.2d 1134, 1139 (5th Cir.1985), citing *Prosser and Keaton on the Law of Torts*, § 120 at 894–95, (5th ed.) (1984). In the instant case, this court already has noted Trilogy's belief that fusion-bonding was a broad term which would encompass the heating of an adhesive to melt foam. This court simply finds no sinister purpose on the part of Trilogy in pursuing what it believed to be a legitimate theory of the case. Nevertheless, the defendants insist: (1) that Trilogy misrepresented its reliance; (2) that the manner in which Trilogy conducted the Wilkenloh deposition shows such; and (3) that Trilogy merely filed this lawsuit to force a settlement.

In *Armco v. Southern Rock, Inc.*, Armco was accused of bringing a lawsuit for merely defensive reasons in order to obtain a settlement with Southern Rock. The Fifth Circuit noted that the situation was an appropriate one for declaratory relief. "If Armco was seeking a settlement," said the Fifth Circuit, "it was a settlement of the very controversy in suit, not of some controversy as to which the suit was not relevant." *Id.* at 1139. Similarly, in the instant case, this court finds that Trilogy was seeking to establish its broad view of the fusion-bonding process and overcome the position taken by the defendants that fusion-bonding was a term limited to the direct melting of foam insulation. This court finds no malice in Trilogy's motives for filing this lawsuit as malice is defined under Mississippi law for the purpose of determining malicious prosecution. Inasmuch as this court has found that Trilogy had probable cause for filing this lawsuit, no inference of malice may be gleaned from a lack of probable cause.

### 3. Does Victory on the Merits Establish a Prima Facie Case of Malicious Prosecution?

The defendants argue that once the prosecution has been terminated in their favor, this constitutes prima facie evidence that Trilogy's prosecution of this lawsuit was initiated with malice and without probable cause. This argument was implicitly rejected by the Fifth Circuit in *Armco, Inc. v. Southern Rock, Inc.*, where the Court noted that taking the case away from the jury and dismissing Armco's lawsuit was not evidence of malicious prosecution. *Id.*, 778 F.2d at 1138 n. 2. Then, in *Robb v. United States Fidelity and Guaranty Company*, 798 F.2d 788 (5th Cir. 1986), the Fifth Circuit, faced with the same issue, stated:

The broad question presented is whether record evidence required the District Court to find that USF & G had probable cause to file the subrogation suit. Appellees argue first that their victory in the subrogation suit required the District Court to deny appellant's motion for directed verdict and permit the jury to decide the probable cause issue. Appellees rely on the following language from *State Life Insurance Company v. Hardy*, 189 Miss. 266, 195 So. 708, 712 (1940), for this proposition: "The appellee's acquittal ... is prima facie evidence that the prosecution wasn't instituted with malice and without probable cause." Appellees interpret this language to mean that regardless of how reasonable USF & G was in filing the subrogation suit, they were entitled to

have a jury determine whether USF & G had probable cause to file the subrogation action once proof of a favorable determination of that suit was introduced. We disagree. In *State Life Insurance*, the plaintiff in a malicious prosecution action did not rely solely on his acquittal in an earlier criminal proceeding to defeat the motion for a directed verdict. Thus, the Court was not faced with determining whether the acquittal alone was sufficient to defeat the defendant's motion. Also, we explicitly rejected appellee's argument in *Armco, Inc., v. Southern Rock*. In *Armco*, Southern Rock obtained a dismissal of a civil action filed against it by Armco. Southern Rock then filed a malicious prosecution suit against Armco. The district court dismissed the suit at the close of the evidence and refused to submit the case to the jury. We affirmed the dismissal and concluded that the termination of the earlier civil proceeding was not evidence that the malicious prosecution suit was without probable cause. 778 F.2d at 1138, Footnote 2. Thus, we conclude that a Mississippi Court would not submit a malicious prosecution suit to a jury simply because the plaintiff lost the underlying suit.

798 F.2d at 790.

Therefore, in keeping with the *Robb* decision, this court rejects the argument that the defendants' victory on the merits may serve as evidence that probable cause for this lawsuit was lacking.

### C. *Unfair Competition*

The defendants also raised the counterclaim of unfair competition, although very little argument was made in support of the claim. Clearly, at a minimum, "unfair competition" must involve "[s]ome substantial component of competitive injury." *Delta Pride Catfish, Inc. v. Home Insurance Company*, 697 So.2d 400, 405 (Miss. 1997), quoting *Keating v. National Union Fire Ins. Co.*, 995 F.2d 154, 155 (9th Cir. 1993). In *Delta Pride*, the Mississippi Supreme Court noted that "[t]his is the view

of the majority of courts considering the definition of 'unfair competition' in this context. *See Bank of the West*, 10 Cal. Rptr.2d at 544, 833 P.2d at 551; *Graham Resources, Inc. v. Lexington Ins. Co.*, 625 So.2d 716 (La.App.1993)."

In *Cenac v. Murry*, 609 So.2d 1257, 1269 (Miss.1992), the Mississippi Supreme Court, citing *Memphis Steam Laundry-Cleaners v. Lindsey*, 192 Miss. 224, 5 So.2d 227 (1941), noted that the cause of action for unfair competition exists under Mississippi law against one who sets about to maliciously and wantonly injure a competitor. The *Cenac* Court went on to note that a cause of action for unfair competition exists where one with a malicious purpose sets about to injure the business of another, and injury does result. "The act and the accompanying motive together," said the Court, "constitute the unlawful act." *Id.* at 1269, citing *Memphis Steam Laundry-Cleaners*, 5 So.2d at 232.

Earlier, this court found on defendants' malicious prosecution claim that defendants had failed to establish a prima facie case showing Trilogy acted maliciously and without probable cause. This holding also suffices to doom the defendants' claim of unfair competition, since a requisite element of proof here, too, is malice. Thus, this court finds no basis for the defendants' counterclaim of unfair competition.

### CONCLUSION

This court finds that Trilogy Communications, Inc., filed a patent infringement lawsuit against Times Fiber Communications, Inc., and LPL Communications, Inc., to establish with certainty its contention that fusion-bonding was not limited only to the manufacturing process whereby foam insulation inside a coaxial cable was heated directly and melted so as to adhere to the inside wall of a protective metal jacket. Trilogy's failure to succeed in its effort to establish a broader definition of fusion-bonding in no way implies that the instant litigation was pursued maliciously and

without probable cause. Although defendants have sought by their proof to show otherwise, defendants' proof on the points is simply not substantial enough to establish a prima facie case as demanded by Rule 50. Therefore, Trilogy's motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure is well taken and is hereby granted.

**SO ORDERED AND ADJUDGED.**