**R. D. BROWN, Plaintiff-Appellant,**

v.

**The UNITED STATES of America, Defendant-Appellee.**

No. 80–1163.

United States Court of Appeals, Fifth Circuit. Unit A

Aug. 10, 1981.

Rehearing and Rehearing En Banc Denied Sept. 29, 1981.

Fillmore & Camp, H. Dustin Fillmore, Randy J. Hall, Fort Worth, Tex., for plaintiff-appellant.

Judith A. Shepherd, Asst. U. S. Atty., Dallas, Tex., for defendant-appellee.

Before RUBIN and GARZA, Circuit Judges, and SUTTLE,* District Judge.

ALVIN B. RUBIN, Circuit Judge:

This is an action under the Federal Tort Claims Act (FTCA) against the United States. R. D. Brown seeks to recover damages on the ground that an F.B.I. agent, by giving false testimony to a state grand jury and two state criminal juries, maliciously prosecuted Brown and violated Brown's fourth and fifth amendment rights. The district court dismissed the complaint, finding that the agent acted without malice; the court failed to discuss Brown's constitutional claims. We affirm, holding that, as to the malicious prosecution claim, the district court committed no error in finding that Brown failed to prove that the agent acted with malice. We also conclude that Brown's constitutional claims are not cognizable under the FTCA.

* District Judge of the Western District of Texas, sitting by designation.

## I.

In July, 1973, Texas State and Federal Deposit Insurance Corporation bank examiners discovered a check "kite" by a depositor in the First State Bank at Vernon, Texas.[1] The bank was closed and placed in receivership. Because the "kite" was used to finance the purchase of cotton, and the cotton later increased dramatically in value, the amounts recovered from the perpetrators of the "kite" and from the bank's assets were sufficient to avert any loss to the F.D.I.C. or to the bank's stockholders.

Lee Stephens, an F.B.I. agent supposedly expert in accounting and banking matters, was assigned to investigate the possibility that violations of federal banking laws had occurred. He arrived in Vernon after the bank had been closed, and, during the investigation, supervised the activities of a staff of thirty-eight, including F.B.I. agents and personnel of the Texas Department of Safety.

A federal grand jury returned an indictment against the kite-flyers and they were later convicted. The case against Mr. Brown, president of the bank, was also presented to a federal grand jury but it returned no indictment. A state grand jury investigated the matter. In accordance with the federal policy of cooperation with state law enforcement officials, Mr. Stephens testified before that grand jury. After an indictment was returned, Stephens later testified in each of the criminal trials that resulted. Mr. Brown was acquitted in each.

## II.

■ Recognizing that those who act for the State are fallible, that public servants may in the course of their duties injure others, and that the polity should redress such harm, Congress partially waived the United States' sovereign immunity from tort claims by enacting the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* The statute, however, continued to assert immunity for certain intentional torts, including malicious prosecution. *See* Federal Tort Claims Act, ch. 646, § 2680(h), 62 Stat. 984 (1948). In 1974, Congress amended the FTCA to permit actions "arising" from these willful torts when committed by federal "investigative or law enforcement officers." *See* Pub.L.No. 93–253, § 2, 88 Stat. 50 (1974), codified at 28 U.S.C. § 2680(h). Because, as the government has conceded, Stephens was an "investigative officer," Brown's malicious prosecution claim was properly brought under the amendment.

■ The grant to federal district courts of jurisdiction to maintain FTCA claims provides for governmental liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the *law of the place* where the act or omission occurred." 28 U.S.C. § 1346(b) (emphasis supplied). This requires us to look to the tort law of the state where the federal agent acted. *United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 1853, 10 L.Ed.2d 805, 809 (1963); *Bettis v. United States,* 635 F.2d 1144, 1147 (5th Cir. 1981); *Mundt v. United States,* 611 F.2d 1257, 1259 (9th Cir. 1980) (suit under 28 U.S.C. § 2680(h)).

■ The trial judge held that, to recover damages for malicious prosecution in Texas, the plaintiff must prove seven elements: (1) a criminal action was commenced against him; (2) the prosecution was caused by the defendant or with his aid; (3) the action terminated in the plaintiff's favor; (4) the plaintiff was innocent; (5) the defendant acted without probable cause; (6) the defendant acted with malice; and (7) the criminal proceeding damaged the plain-

---

1. In essence, a "kite" consists of a bank depositor writing checks against a bank account lacking the funds to cover the amount of the checks, relying on either hope or deceit to ensure that the necessary funds will be deposited before the check is presented to the bank for payment. *See Sutro Bros. & Co. v. Indemnity Insurance Co.,* 234 F.Supp. 273, 283 (S.D.N.Y. 1967), aff'd 386 F.2d 798 (2d Cir. 1967). The kite is usually supported by the wind of depositing to the same account checks drawn on another account that in fact lacks funds to honor the checks.

tiff. This is a correct statement of Texas law. *See Bass v. Metzger,* 569 S.W.2d 917, 924 (Tex.Civ.App.1978).

■ The first three elements were stipulated. After a five day trial, the trial judge held that Brown was in fact innocent and that Stephens acted without probable cause. However, he found that Stephens acted without malice. The determination of malice in malicious prosecution cases is a question of fact. *Nesmith v. Alford,* 318 F.2d 110, 123 (5th Cir. 1963) (applying Alabama law), *cert. denied,* 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964); *Gleghorn v. Koontz,* 178 F.2d 133, 136 (5th Cir. 1949) (applying Texas law); *Good Holding Co. v. Boswell,* 173 F.2d 395, 399 (5th Cir. 1949), *cert. denied,* 338 U.S. 815, 70 S.Ct. 55, 94 L.Ed. 493 (1949). On appellate review, such conclusions are reversible only if clearly erroneous. Rule 52(a), Fed.R.Civ.P.

The government has not contested the district court's finding that Stephens acted without probable cause. We must determine only whether the court's finding that Stephens acted without malice is clearly erroneous.

■ The district court properly recognized that, under Texas law, malice may be inferred from the lack of probable cause or from a finding that the defendant acted in reckless disregard of the other person's rights. *Bass v. Metzger,* 569 S.W.2d at 923. The inference is permissible, but not inevitable.

■ With ample support from the record, and the benefit of personal evaluation of Stephens's testimony, the district court found that, while Stephens had made a number of incorrect statements, the "misstatements were not intentional and resulted from motives other than a malicious desire to prosecute Mr. Brown." The district judge also found that during the federal investigation, "Mr. Stephens had always behaved impartially toward Brown even to the extent of providing that District Attorney with certain exculpatory evidence." Because the conclusion that Stephens acted without that malice indispens-

able to liability has substantial support in the record and is not plainly contraindicated, we accept it as not clearly erroneous without condoning Stephens's unprofessional behavior. We, therefore, affirm the dismissal of Brown's malicious prosecution claim.

### III.

The district court said nothing about the constitutional claims set forth in the complaint. We must, however, consider whether they provide any ground for either reversing the district court's decision or vacating for further findings of fact. *See Armstrong v. Collier,* 536 F.2d 72, 77 (5th Cir. 1976).

In his complaint, Brown alleged that Stephens's actions violated rights guaranteed by the fourth and fifth amendments. These claims have never been explicated at any length. As best as we can determine, Brown contends that the giving of false testimony violated the fourth amendment by leading to Brown's arrest without probable cause and violated the fifth amendment by denying Brown due process before a state grand jury and during two state jury trials. These claims are problematic at best; we cannot consider them, however, unless we determine that the United States has waived its sovereign immunity from these claims, enabling the district court to exercise jurisdiction.

In essence, Brown seeks to bring a *Bivens* action under the FTCA against the United States. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held "[t]hat damages may be obtained for injuries consequent upon a violation of the Fourth Amendment by federal officials." *Id.* at 395, 91 S.Ct. at 2004, 29 L.Ed.2d at 626. *Bivens* also recognized, however, that the United States did not become vicariously liable for constitutional torts of its officials, reaffirming the accepted doctrine that the United States had not waived its sovereign immunity from such actions.

If Congress has dropped the sovereign shield, it did so in the same 1974 amendment that forms the basis for Brown's malicious prosecution action. *See Birnbaum v. United States*, 588 F.2d 319, 327–28 & n.18 (2d Cir. 1978); *Norton v. United States*, 581 F.2d 390, 393 & n.3 (4th Cir. 1978), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 678 (1978). The language of the amendment opens for decision two related questions: whether the government accepted liability only for the six common law torts listed in the amendment or whether its waiver is broader and extends to any constitutional deprivation that might arise out of actions similar to those torts; and, in either event, whether the definition of the cause of action is determined by the law of the state where the allegedly wrongful act was committed or whether it reaches further and provides governmental responsibility for every action for which an individual officer would himself be liable under *Bivens*. While the answer to these questions may be different, we consult the same sources in considering them.

Read in isolation, the amendment might appear to sanction recovery not only for the six torts but to all claims for constitutional violation that arise from such tortious acts:

> the provisions of this chapter and Section 1346(b) of this title shall apply to any claim *arising*, on or after the date of the enactment of this proviso, *out of* assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.

Pub.L.No. 93–253, § 2, 88 Stat. 50 (1974), codified at 28 U.S.C. § 2680(h) (emphasis supplied). The words "arising . . . out of" are broad, and might embrace actions predicated on (thus "arising out of") the same operative facts, even though the legal theory of liability, violation of constitutional rights, is different. The legislative history suggests that, at least under some circumstances, Congress intended to provide a new remedy for any violation of constitutional rights. In large measure, the amendment was Congress's reaction to the *Bivens* decision in 1971 and a series of illegal raids by federal narcotics investigators in Southern Illinois.[2] Expressing his outrage at the raids, Senator Percy of Illinois called for a direct remedy against the government for violations of constitutional rights committed by federal agents.

> Surely, the Federal treasury is large enough to indemnify citizens whose *constitutional rights* have been blatantly violated.

(Emphasis added.) S.Rep.No. 93–469, 93d Cong., 1st Sess. 29, 36 (1973) (individual views of Sen. Percy).

Senators Percy and Ervin subsequently introduced what became the 1974 amendment to the FTCA as an amendment to the "Reorganization Plan No. 2 of 1973," an act reorganizing federal drug law enforcement. The report accompanying the amendment dealt explicitly, though ambiguously, with *Bivens* and constitutional torts.[3]

**2.** Boger, Gitenstein, & Verkuil, *The Federal Tort Claims Act Intentional Torts Amendment: An Interpretative Analysis*, 54 N.C.L.Rev. 497, 500–17 (1976), contains an excellent discussion of the amendment's legislative history.

**3.** The report recites:

> *Furthermore*, this provision should be viewed as a counterpart to the *Bivens* case and its progenty [sic], in that it waives the defense of sovereign immunity so as to make the Government independently liable in damages for the same type of conduct that is alleged to have occurred in *Bivens* (and for which that case imposes liability upon the individual Government officials involved).
>
>     \*    \*    \*    \*    \*    \*
>
> This whole matter was brought to the attention of the Committee in the context of the

Collinsville [, Illinois] raids, where the law enforcement abuses involved Fourth Amendment constitutional torts. Therefore, the Committee amendment would submit the Government to liability whenever its agents act under color of law so as to injure the public through searches and seizures that are conducted without warrants or with warrants issued without probable cause. However, the Committee's amendment should not be viewed as limited to constitutional tort situations. . . .

S.Rep.No.93–588, 93d Cong., 2d Sess. 3, *reprinted in* [1974] U.S.Code Cong. & Ad. News, 2789, 2791. In light of this strong language, it would not have been surprising had Congress enacted a provision clearly allowing *Bivens* actions, at least in those cases in which state law failed to provide an adequate analogue. In-

The language of the statute, however, limits governmental submission to court jurisdiction for constitutional torts by explicitly subjecting all actions brought under the proviso to "the provisions of . . . Section 1346(b)." In relevant part, Section 1346(b) states that tort actions against the United States may be brought

> where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The explicit language of the proviso does not permit a litigant to escape the "law of the place" limitation. While federal law is, of course, "law of the place" as well (so long as the place is within the United States), the phrase as used in Section 1346(b) refers exclusively to state law. *Carlson v. Green*, 446 U.S. 14, 23, 100 S.Ct. 1468, 1474, 64 L.Ed.2d 15, 26 (1980); *Birnbaum v. United States*, 588 F.2d 319, 327–28 (2d Cir. 1978). In *Carlson*, the Court considered whether Congress meant to preclude *Bivens* actions against individuals by enacting the 1974 amendment. Relying in part on the Senate Report language quoted *supra*, note 3, the Court concluded that *Bivens* actions were permissible actions "complementary" to the remedy provided by the 1974 amendment to the FTCA. 446 U.S. at 18, 100 S.Ct. at 1472, 64 L.Ed.2d at 23. Although the Court did not directly consider the scope of FTCA actions, Justice Brennan, writing for the majority, noted that there are significant distinctions between *Bivens* and FTCA actions and stated one of these:

> an action under FTCA exists *only* if the State in which the alleged misconduct occurred would permit a cause of action

for that misconduct to go forward. 28 U.S.C. § 1346(b) (United States liable "in accordance with the law of the place where the act or omission occurred."). Yet it is obvious that the liability of federal officials for violations of citizens' constitutional rights should be governed by uniform rules.

446 U.S. at 23, 100 S.Ct. at 1474, 64 L.Ed.2d at 26 (emphasis supplied). A concurrence by Justice Powell and a dissent by Justice Rehnquist also concluded that all claims under the Act must meet the "law of the place" requirement. *See* 446 U.S. at 28 n.1, 100 S.Ct. at 1477 n.1, 64 L.Ed.2d at 30 n.1 (Powell, J., concurring); 446 U.S. at 31 n.3, 100 S.Ct. at 1479 n.3, 64 L.Ed.2d at 33 n.3 (Rehnquist, J., dissenting). Justice Brennan's statement, of course, is dicta, not precedent, but it is an integral part of the rationale for the opinion and, therefore, provides enlightenment even if not command.[4] *See United States v. Bell*, 524 F.2d 202, 206 & n.4 (2d Cir. 1975). *Carlson* thus instructs us that the liability of the United States under the Act arises only when the law of the state would impose it. As a "creation of federal law," *Carlson*, 446 U.S. at 23, 100 S.Ct. at 1474, 64 L.Ed.2d at 26, a *Bivens* action cannot be brought under the Act.[5] Because Brown has cited no theory, constitutional or otherwise, on which Texas would impose liability for false testimony given to state grand or petit juries in the absence of malice, we dismiss Brown's constitutional claims for lack of jurisdiction as not sanctioned by "the law of the place."

We leave for another day the question whether, as one court has held, a constitutional tort action "arising out of" one of

stead, however, Congress enacted the narrower, more ambiguous provision we construe today.

4. In *Norton v. United States*, 581 F.2d 390 (4th Cir. 1978), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 678 (1978), the Fourth Circuit relied on the Senate Report and concluded that the 1974 amendment was a "*sui generis*" provision allowing *Bivens* actions against the United States unrelated to other provisions of the Federal Tort Claims Act, presumably including Section 1346(b). *See* 581 F.2d at 395 n.8. (The

government had conceded the applicability of Section 2680(h).) This portion of *Norton* is no longer tenable in light of *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), which was concerned, specifically, with actions brought under the 1974 amendment.

5. Schuck, *Suing Our Servants: The Court, Congress, and the Liability of Public Officials for Damages*, 1980 Sup.Ct.Rev. 281, 356–57 (arguing that the "law of the place" requirement should, therefore, be repealed).

Section 2680(h)'s six enumerated torts is viable under the Act if sanctioned by "the law of the place." *See Birnbaum v. United States*, 436 F.Supp. 967, 983–86 (S.D.N.Y. 1977) (Weinstein, J.), *aff'd on other grounds*, 588 F.2d 319 (2d Cir. 1978).

The judgment of the district court dismissing the complaint is AFFIRMED.