# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01509-COA

BETH DONALDSON, COLIE DONALDSON AND     APPELLANTS
COBY DONALDSON

v.

DOMINIC OVELLA              APPELLEE

DATE OF JUDGMENT:    10/01/2014
TRIAL JUDGE:      HON. LAWRENCE PAUL BOURGEOIS JR.
COURT FROM WHICH APPEALED: HARRISON COUNTY CIRCUIT COURT,
           FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANTS: DAVID WAYNE BARIA
           ROBERT C. WILLIAMSON JR.
           BRANDON CURRIE JONES
ATTORNEY FOR APPELLEE:  DORRANCE DEE AULTMAN JR.
NATURE OF THE CASE:   CIVIL - TORTS - OTHER THAN PERSONAL
           INJURY AND PROPERTY DAMAGE
TRIAL COURT DISPOSITION:  MOTION FOR SUMMARY JUDGMENT
           GRANTED IN FAVOR OF APPELLEE
DISPOSITION:      REVERSED AND REMANDED - 01/17/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

   **BEFORE LEE, C.J., BARNES AND ISHEE, JJ.**

   **ISHEE, J., FOR THE COURT:**

¶1. In February 2010, Dominic Ovella sued B&C Construction and Equipment LLC (B&C) and its individual officers and employees Beth, Colie, and Coby Donaldson (Donaldsons) in federal district court. Ovella asserted a variety of claims arising from a construction contract between Ovella and B&C. All claims against the Donaldsons, individually, were dismissed. Ovella's claims against B&C, however, were submitted to the

jury, which returned a take-nothing verdict in favor of B&C. The district court subsequently denied B&C's and the Donaldsons' posttrial motions for sanctions. Before this Court now are the consolidated actions of the Donaldsons against Ovella for the malicious prosecution of that federal action, filed in the Harrison County Circuit Court in November 2012. The circuit court granted Ovella's motion for summary judgment in October 2014, based upon procedural grounds, as well as with respect to the merits of the Donaldsons' claims. The Donaldsons now appeal. Finding error, we reverse.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. In March 2008, Ovella and B&C entered into a contract for the construction of a personal residence to be built in Pass Christian, Mississippi. B&C agreed in the contract to construct the home according to plans Ovella provided to it, and which were attached to the contract. The contract specifically noted, among other things, that the house would be built on 12" x 12" wooden columns. The total contract price for the home was $559,000. Throughout construction, Ovella orally ordered a number of alterations to the plans. Specifically, Ovella authorized a change to the home's support columns. These columns were originally proposed to be 12" x 12" wooden columns. However, Ovella orally approved a change to the columns to mimic brick columns he had seen on another home that B&C had constructed. Ovella contends that he approved this change based on the recommendation and advice of Colie. Ultimately, the columns were built as 10" x 10" wooden columns surrounded by stucco because of a notable increase in the price of brick cladding for the columns. Ovella claimed that this change from stucco to brick was agreed to upon the

2

condition that he would receive a credit toward other improvements for the home. Disputes exist in the form of conflicting testimony regarding the alteration of the columns.

¶3.    In May 2009, Ovella and his spouse moved into their house, and received a certificate of occupancy by June 2009. B&C sent a final bill on October 5, 2009, totaling $66,687.42, which included $38,869.26 for upgrades, overages, and various additions that had been made on the home during construction. Ovella claimed that he had made timely payments for the construction from June 2008 until October 5, 2009, with payments totaling $531,181.84. However, he refused to pay the final bill until a number of issues were resolved and he received credits he believed had not been deducted. After that time, Ovella informed B&C that he could feel the house sway in high winds, and that movement within the home caused the house to move on the columns. As a result, B&C installed bracing under the home, which Ovella conceded slightly helped with the issue of swaying. Over a period of several months, Ovella issued various "punch lists" to B&C for items that Ovella wished to have continuously changed or corrected. Communications eventually broke down between Ovella and B&C over the disputed balance, resulting in an impasse among the parties. Ovella then filed a complaint against B&C and the Donaldsons individually on March 1, 2010, in federal district court, regarding construction and payment issues.

¶4.    In Ovella's complaint, Ovella asserted various claims against B&C, as well as claims against the Donaldsons individually for breach of contract, fraud, negligence, and unjust enrichment. In response, the Donaldsons individually filed counterclaims for intentional infliction of emotional distress, as well as for sanctions under 28 U.S.C. § 1927 (2012) and

Federal Rule of Civil Procedure 11.[1] The Donaldsons voluntarily dismissed their intentional-infliction-of-emotional-distress claims over a year before trial, and reserved their claims for sanctions at the close of the federal trial in the form of posttrial motions. The district court dismissed all of Ovella's claims against the Donaldsons individually, as well as all claims by Ovella and B&C for unjust enrichment. Ultimately, the jury found in favor of B&C. At the close of trial, the district court denied all claims for relief regarding sanctions under Rule 11 and 28 U.S.C. § 1927. Ovella did not appeal.

¶5.    In November 2012, each of the Donaldsons sued Ovella in circuit court for malicious prosecution, negligent and intentional infliction of emotional distress, and to recover attorney's fees and expenses incurred during the defense of the federal action. Ovella moved for summary judgment, which the circuit court granted. In doing so, the circuit court concluded that, based upon the federal action, the Donaldsons' claims were barred under the doctrines of res judicata, collateral estoppel, and judicial estoppel. The circuit court also held the Donaldsons failed to present evidence sufficient to create genuine disputes of material fact regarding the merits of their malicious-prosecution claims. The Donaldsons timely appealed. Finding error on the part of the circuit court, we reverse.

**STANDARD OF REVIEW**

¶6.    A trial court's grant or denial of summary judgment is reviewed de novo. *Monsanto Co. v. Hall*, 912 So. 2d 134, 136 (¶5) (Miss. 2005). Summary judgment is proper if "the

---

[1] These claims and counterclaims are what formed the basis for the Donaldsons' malicious-prosecution claims filed in the circuit court, which instigated the present matter before this Court. In addition, the record shows no involvement by Beth other than being a member of B&C.

pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "If any triable facts exist, the lower court's grant of a summary judgment will be reversed; otherwise the decision will be affirmed." *Miller v. Meeks*, 762 So. 2d 302, 304 (¶3) (Miss. 2000). The evidence must be viewed in the light most favorable to the party opposing the motion. *Davis v. Hoss*, 869 So. 2d 397, 401 (¶10) (Miss. 2004). Only when the moving party has met its burden by demonstrating that no genuine issues of material fact exist should summary judgment be granted. *Tucker v. Hinds Cty.*, 558 So. 2d 869, 872 (Miss. 1990). "[W]here the party opposing the motion for summary judgment on a claim or defense upon which it bears the burden of proof at trial, and the moving party can show a complete failure of proof on an essential element of the claim or defense, other issues become immaterial and the moving party is entitled to summary judgment as a matter of law." *Crain v. Cleveland Lodge 1532, Order of Moose Inc.*, 641 So. 2d 1186, 1188 (Miss. 1994).

### DISCUSSION

I. **The Circuit Court Erred in Granting Ovella's Motion for Summary Judgment Because the Doctrines of Res Judicata, Collateral Estoppel, and Judicial Estoppel Do Not Apply to the Donaldsons' Claims**

¶7.     The circuit court held that the Donaldsons' claims were barred under the doctrines of res judicata, collateral estoppel, and judicial estoppel. We disagree.

A.     **Res Judicata**

¶8.     The Mississippi Supreme Court has stated that the doctrine of res judicata is

"fundamental to the equitable and efficient operation of the judiciary and 'reflects the refusal of the law to tolerate a multiplicity of litigation.'" *Gibson v. Williams, Williams & Montgomery P.A.*, 186 So. 3d 836, 844 (¶16) (Miss. 2016) (quoting *EMC Mortg. Corp. v. Carmichael*, 17 So. 3d 1087, 1090 (¶9) (Miss. 2009)). "The courts cannot revisit adjudicated claims and 'all grounds for, or defenses to[,] recovery that were available to the parties in the first action, regardless of whether they were asserted or determined in the prior proceeding, are barred from re-litigation in a subsequent suit under the doctrine of res judicata.'" *Id.* (citing *Harrison v. Chandler-Sampson Ins.*, 891 So. 2d 224, 232 (¶23) (Miss. 2005)). As a doctrine of public policy, res judicata is "designed to avoid the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Harrison*, 891 So. 2d at 224 (¶23) (internal quotations omitted).

¶9.     In order for res judicata to apply, four basic identities must be present: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of the person against whom the claim is made. *Gibson*, 186 So. 3d at 844 (¶17). Our supreme court has also added the additional requirement that the prior judgment must be a final judgment on the merits. *Id.* All five identities must be present, with the absence of any one being "fatal to the defense of res judicata." *Id.*

¶10.     On appeal, the Donaldsons argue that the subject matter of their malicious-prosecution claims and the subject matter of their requests for sanctions in the previous federal action are

6

not identical. We agree. Regarding the first element, the supreme court has defined the "identity of the subject matter of the action" to mean "the substance of the lawsuit." *Hill v. Carroll Cty.*, 17 So. 3d 1081, 1085 (¶12) (Miss. 2009). The subject matter of the present matter is malicious prosecution.

¶11. To succeed on a claim for malicious prosecution, a plaintiff must prove, by a preponderance of the evidence, six elements: (1) the institution of a proceeding; (2) by, or at the insistence of, the defendant; (3) the termination of such proceeding in the plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceeding; and (6) the suffering of the injury or damage as a result of the prosecution. *Miles v. Paul Moak of Ridgeland Inc.*, 113 So. 3d 580, 585 (¶10) (Miss. Ct. App. 2012). Thus, the subject matter in the present dispute is the actions of Ovella, whereas the subject matter of the motions in the federal case—sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927—was the conduct of Ovella's lawyers in pursuing those claims in federal court.

¶12. Therefore, while there is not Mississippi caselaw directly on point, other courts have held that Rule 11 and the tort of malicious prosecution "differ in their nature, the elements of the claims, and the potential remedies." *Cohen v. Lupo*, 927 F.2d 363, 365 (8th Cir. 1991). Because these are two separate and distinct actions, it has become well recognized that the grant or denial of a Rule 11 motion does not serve as res judicata for a subsequently filed claim for malicious prosecution. *See Lightning Lube Inc. v. Witco Corp.*, 4 F.3d 1153, 1196 (3d Cir. 1993) (holding "the denial of a Rule 11 motion does not foreclose the assertion of

7

a subsequent malicious prosecution suit"); *see also In re Southmark Corp.*, 163 F.3d 925, 934-35 (5th Cir. 1999) (citing *Port Drum Co. v. Umphrey*, 852 F.2d 148, 150 (5th Cir. 1988) (holding "[i]f Rule 11 did expand substantive rights, it would be invalid under the Enabling Act" because Rule 11's purpose is to regulate procedure rather than create a new substantive right or an independent cause of action)). Even more authoritative is the advisory committee note to Rule 11, which specifically states that "it should be noted that Rule 11 *does not preclude* a party from initiating an independent action for malicious prosecution or abuse of process." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment (emphasis added). As such, we find that the Donaldsons' malicious-prosecution claims encompass both a different subject matter *and* cause of action than the motion for Rule 11 sanctions. Therefore, res judicata cannot apply as two of the doctrine's five identities are not satisfied.

¶13. In addition, res judicata cannot apply to the Donaldsons' claims as the federal court did not issue a final judgment on the merits. *See Gibson*, 186 So. 3d at 844 (¶17). For a factual issue to be precluded, there must have been an actual adjudication of the issue followed by a full and fair opportunity to litigate the issue. *Carmichael*, 17 So. 3d at 1091 (¶16). From the record before this Court, there is no evidence that the federal district court adjudicated whether Ovella possessed probable cause when he sued the Donaldsons. Rather, the record reflects that the district court denied the Donaldsons' Rule 11 motion on purely procedural grounds, as the district-court judge explicitly stated, "The [Donaldsons] have not shown that they complied with the safe harbor provision [of Rule 11(c)(2)], and their motion for sanctions under Rule 11 will be denied on that basis." By denying the Donaldsons' Rule

8

11 motion for sanctions on procedural grounds, the federal district court never addressed the merits of the Rule 11 motion.

¶14. In the same vein, the federal district court's denial of the Donaldsons' 28 U.S.C. §1927 claim related to actions taken by Ovella's attorneys in the prosecution of the case, and in particular, sought costs and attorney's fees. Regarding this claim, the federal district judge stated, "The relevant inquiry is whether the claims were at least colorable at the time of the [lawyers'] signing of the complaint." Again, however, the Donaldsons' section 1927 claims were against Ovella's attorneys; in the present action, the Donaldsons' malicious-prosecution claims relate only to Ovella. As such, the resolution of the Donaldsons' section 1927 claims has no bearing on the merits of the Donaldsons' malicious-prosecutions claims under review by this Court.

¶15. In sum, to adjudicate whether Ovella possessed probable cause would have required the federal district court to go beyond the elements necessary in determining whether Rule 11 sanctions were proper. To reiterate, this is because the procedural device that is Rule 11 and the substantive tort of malicious prosecution "differ in their nature, the elements of the claims, and the potential remedies." *Cohen*, 927 F.2d at 365. Therefore, as the advisory committee note to Rule 11 confirms, a Rule 11 adjudication does not bar a subsequent malicious-prosecution action. Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment; *see also Cohen*, 927 F.2d at 365 (holding Rule 11 adjudication "did not decide [whether the complaint] was filed with[] probable cause, whether [the plaintiffs] acted with malice, or the amount of damages [the defendant] suffered as a result of [the plaintiffs']

misconduct. Those inquiries are irrelevant under Rule 11, but are the sum and substance of the tort of malicious prosecution."). Thus, we find that the Donaldsons' claims are not barred by the doctrine of res judicata as the five essential identities of the doctrine have not been satisfied.

### B. Collateral Estoppel

¶16. "The doctrine of collateral estoppel—often considered the cousin of res judicata—serves a 'dual purpose' and 'protects litigants from the burden of re-litigating an identical issue with the same party or his privy' and 'promotes judicial economy by preventing needless litigation.'" *Gibson*, 186 So. 3d at 845 (¶21) (quoting *Mayor & Bd. of Aldermen, City of Ocean Springs, Miss. v. Homebuilders Ass'n of Miss. Inc.*, 932 So. 2d 44, 59 (¶61) (Miss. 2006)). Collateral estoppel precludes "relitigating a specific issue, which was: (1) actually litigated in the former action; (2) determined by the former action; and (3) essential to the judgment in the former action." *Id.* (citing *Stutts v. Stutts*, 529 So. 2d 177, 179 (Miss. 1988)). Collateral estoppel, however, is distinguished from res judicata in that it applies only to those issues "actually litigated and not to those issues which merely could have been litigated in the prior suit." *Id.* Finally, our supreme court has held that both doctrines of res judicata and collateral estoppel, "even if found to be permissible, are not inflexible commands which must be brutally enforced in all cases." *Id.* (internal quotations omitted).

¶17. In granting Ovella's motion for summary judgment, the circuit court held the Donaldsons' claims were barred by collateral estoppel "since their individual counter-claims

10

were dismissed as a matter of law[, and] [t]he Donaldsons cannot complain of malicious prosecution since they themselves lost the very same claims by counter-claim/third-party complaint that they allege Ovella maliciously prosecuted." For reasons similar to those discussed concerning res judicata, however, we hold that collateral estoppel cannot apply. Simply put, all the elements of collateral estoppel are not satisfied.

¶18. As discussed above, the merits of whether Ovella possessed probable cause or malice in the institution of the federal action was not actually litigated in the former action, was not determined by the former action, and therefore, could not have been essential to the judgment. *See Gibson*, 186 So. 3d at 846 (¶23). For these reasons, this Court finds that neither res judicata nor collateral estoppel precludes the Donaldsons' malicious-prosecution claims in the present matter.

### C.    Judicial Estoppel

¶19. "Judicial estoppel is designed to protect the judicial system and applies where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Id.* at (¶24) (quoting *Kirk v. Pope*, 973 So. 2d 981, 991 (¶31) (Miss. 2007)). Judicial estoppel arises "when one party asserts a position contrary to one taken in a prior litigation," and "precludes a party from asserting a position, benefitting from that position, and then, when it becomes more convenient or profitable, retreating from that position later in the litigation." *Id.* (internal citations omitted).

¶20. The elements necessary to demonstrate judicial estoppel are: (1) the position must be clearly inconsistent with one taken during previous litigation; (2) the court must have

11

accepted and relied on the previous position; and (3) the party must not have inadvertently taken the inconsistent position. *Id.* at (¶25). The doctrine shall not apply, however, where a party does not benefit from the assertion of a prior position. *Id.* Reviewing the record before us, we find that judicial estoppel does not apply in the present matter.

¶21. The circuit court held that the Donaldsons' claims were barred under judicial estoppel because the Donaldsons had "chang[ed] their positions" by virtue of the "corporate shield [being] waived in both matters." Thus, the circuit court concluded the Donaldsons had taken inconsistent positions by asserting individual counterclaims in the federal action against Ovella, but later asserting the "corporate shield" defense in the present action. We respectfully disagree with this characterization by the circuit court, as the corporate-shield defense is neither an affirmative defense, nor was it waived by the Donaldsons in either action.

¶22. In the original federal-court action, Ovella sued B&C as well as the Donaldsons individually. In their answers to Ovella's federal-court complaint, the Donaldsons alleged that they "were acting in the course and scope of their employment with B&C Construction, LLC," and in addition, that Ovella had pled "no facts or allegations justifying the claims against the individual defendants." In the present malicious-prosecution action, the Donaldsons allege that Ovella's claims were instituted against them "without probable cause and for malicious purposes including harass[ment] and coerc[ion] causing [them] financial hardship, and retaliating against [them] for actions taken by others." We find the Donaldsons' position in the federal case to be wholly consistent with their position in the

12

present matter. As such, the first prong of the judicial-estoppel framework is not satisfied.

¶23. Ovella argues, however, that the corporate-shield defense is an affirmative defense, and must have been affirmatively pled by the Donaldsons. Ovella further argues that by asserting individual counterclaims in the federal action, the Donaldsons waived the corporate-shield defense, and thus, cannot assert the corporate shield here, thereby adopting an inconsistent position than that in the federal action. We find this argument without merit, as neither Federal Rule of Civil Procedure 8(c)(1), nor Mississippi Rule of Civil Procedure 8(c), delineates the "corporate shield" as an affirmative defense. Furthermore, nothing in the record indicates that Ovella affirmatively pled any grounds showing his intention to pierce the corporate veil, or that the Donaldsons' actions were taken outside or beyond the scope of their authority as officers and members of B&C. *See Powertrain Inc. v. Ma*, 640 F. App'x 263, 266 (5th Cir. 2016) (holding "[c]orporate veil claims are analyzed under state law"); *see also Can. Nat'l Ry. Co. v. Waltman*, 94 So. 3d 1111, 1116 (¶9) (Miss. 2012) (holding "in order to make a prima facie case of jurisdiction, the plaintiff must make sufficiently particularized allegations demonstrating the applicability of the piercing doctrine to the facts of the case").

¶24. As the first prong of the judicial-estoppel framework cannot be satisfied, we find the latter two prongs of the doctrine are therefore inapplicable. Ovella did not properly plead or provide specific allegations regarding his intention to pierce B&C's corporate veil, and the Donaldsons did not waive the corporate-shield defense in either the federal action or the present matter. As we find the Donaldsons have not adopted an inconsistent position, we

13

likewise find that the Donaldsons have not benefitted from their prior position, and therefore, their claims are not barred by judicial estoppel. *See Gibson*, 186 So. 3d at 846-47 (¶¶25, 29) (holding that the doctrine of judicial estoppel cannot apply where a party does not benefit from a prior position). Thus, reviewing the record anew, this Court finds that the circuit court erred in barring the Donaldsons' malicious-prosecution claims under the doctrines of res judicata, collateral estoppel, and judicial estoppel.

**II.     Genuine Issues of Material Fact Exist as to Whether Ovella Possessed Probable Cause and Malice**

¶25.    As we find that the circuit court erred in granting Ovella's motion for summary judgment on procedural grounds, we also find the existence of genuine disputes regarding material facts related to the merits of the Donaldsons' malicious-prosecution claims. In particular, we find that the circuit court erred in finding there is no genuine dispute as to any material fact regarding whether Ovella possessed probable cause and malice in the assertion of his federal claims against the Donaldsons individually.

**A.     Probable Cause**

¶26.    Under the tort of malicious prosecution, "[p]robable cause is determined from the facts apparent to the observer when prosecution is initiated." *Miles*, 113 So. 3d at 585 (¶11). To establish "probable cause requires the concurrence of (1) a subjective element—an honest belief in the guilt of the person accused, and (2) an objective element—reasonable grounds for such beliefs." *Id.* Regarding the element of probable cause, the circuit found that probable cause was evidenced by (1) the denial of sanctions; (2) Ovella's claims surviving two separate motions for summary judgment; and (3) Ovella's claims for negligence,

14

misrepresentation, breach of warranty, and breach of contract were all submitted to a jury, and survived a motion for a judgment as a matter of law. Reviewing the evidence in the light most favorable to the Donaldsons, however, we find the circuit court's reliance on these aspects misplaced, and therefore, erroneous.

¶27. As discussed above, the denial of sanctions by the district-court judge under Federal Rule 11 and 28 U.S.C. § 1927 did not address the merits of whether Ovella possessed probable cause or malice in the initiation of his federal action. *See Cohen*, 927 F.2d at 365 (holding Rule 11 adjudication "did not decide [whether the complaint] was filed with[] probable cause, [or] whether [the plaintiffs] acted with malice . . . . Those inquiries are irrelevant under Rule 11, but are the sum and substance of the tort of malicious prosecution."). In addition, the two motions for summary judgment that the circuit court relied upon had no relation to whether Ovella possessed probable cause and malice in the federal action. Rather, as the district-court judge pointed out in the record, the motions for summary judgment related to "alleged building code violations" and Ovella's "duty to mitigate [his] damages." Finally, the fact that Ovella had certain claims submitted to the jury, as well as survived a motion for a judgment as a matter of law, is irrelevant to the present action. These claims pertained directly to liability on the part of B&C—not the Donaldsons individually. This is further evidenced by the district court's dismissal of all claims by Ovella against the Donaldsons individually, stating there was "insufficient evidence to support [Ovella's] claims against the individual [d]efendants." Thus, we find that the circuit court erred in relying on these components as undisputed evidence that Ovella

15

possessed sufficient probable cause.

¶28. Moreover, the record reflects conflicting testimony regarding whether Ovella's house would be "sway proof" or "sway resistant," as well as the size and type of columns that would be used to support Ovella's home. Ovella testified that Colie and Coby represented to him that Ovella's home would be sway proof, meaning his home would not sway or move in the wind. Colie and Coby testified, however, that they informed Ovella otherwise—that Ovella would not experience excessive movement in the wind, thereby making his home sway resistant, rather than sway proof. In addition, Ovella also testified that Colie and Coby represented to him that his home would be built on 12" x 12" wooden columns. While 12" x 12" columns were originally agreed upon by Ovella and B&C, Colie and Coby contested this testimony by testifying themselves that Ovella directed B&C to alter the columns to be 10" x 10", based upon a differently styled home Ovella had been shown by B&C. On cross-examination, Ovella admitted he had ordered B&C to make the changes, and moreover, that he had been advised by an engineer any house built on stilts was subject to some movement in the wind.

¶29. Furthermore, regarding whether Ovella's house swayed excessively, Ovella neither requested nor conducted any investigation by an engineer prior to suing B&C and the Donaldsons individually in federal court. "Where a reasonable person would investigate further prior to instituting a proceeding, the failure to do so indicates a lack of probable cause." *Junior Food Stores Inc. v. Rice*, 671 So. 2d 67, 74 (Miss. 1996). We find this fact to weigh against the circuit court's finding that, as a matter of law, Ovella possessed probable

16

cause. Furthermore, when facts are in dispute, such as is the case regarding the conflicting testimony by Ovella, Colie, and Coby, probable cause becomes a jury issue. *See Moon v. Condere Corp.*, 690 So. 2d 1191, 1195 (Miss. 1997). As such, we find there is a genuine dispute as to material facts regarding whether Ovella possessed probable cause (i.e., an honest belief and reasonable grounds for such a belief). *See Miles*, 113 So. 3d at 585 (¶11).

### B. Malice

¶30. Next, to determine whether Ovella acted with malice, Mississippi courts look to a party's subjective state of mind. *Nassar v. Concordia Rod & Gun Club Inc.*, 682 So. 2d 1035, 1042 (Miss. 1996) (citing *Owens v. Kroger Co.*, 430 So. 2d 843, 846 (Miss. 1983)). In an effort to define malice, the supreme court has said that the term "malice" in the law of malicious prosecution is used in an artificial and legal sense and applied to prosecution instituted primarily for some purpose other than that of bringing an offender to justice. *Benjamin v. Hooper Elec. Supply Co.*, 568 So. 2d 1182, 1191 (Miss. 1990); *Owens*, 430 So. 2d at 846. Malice in the artificial and legal sense does not refer to mean or evil intent as a layman might ordinarily think. The determination of malice is a question of fact to be determined by the jury unless only one conclusion may reasonably be drawn from the evidence. Malice may be and usually is shown by circumstantial evidence. *See Benjamin*, 568 So. 2d at 1191; *see also Strong v. Nicholson*, 580 So. 2d 1288, 1293 (Miss. 1991). Moreover, absence of probable cause for the prosecution is circumstantial evidence of malice. *Trilogy Commc'n Inc. v. Times Fiber Commc'n Inc.*, 47 F. Supp. 2d 774, 780-81 (S.D. Miss. 1998). Finally, malice may be inferred from a finding that the defendant acted

in reckless disregard of the other person's rights. *Brown v. United States*, 653 F.2d 196, 199 (5th Cir. 1981), *cert. denied*, 456 U.S. 925 (1982).

¶31. Applying these principles to the facts in the record before us, we find there are genuine disputes as to material facts with respect to whether Ovella possessed malice in the institution of his federal claims against the Donaldsons individually. As absence, or the possible absence, of probable cause for the prosecution is circumstantial evidence of malice, we find there is a genuine dispute as to Ovella's state of mind at the time of his filing the federal action. *See Trilogy Commc'n*, 47 F. Supp. 2d at 780-81. Moreover, we find that summary judgement was improper regarding this element of the Donaldsons' malicious-prosecution claims as this element is generally a question for the jury. *See id.* Lastly, we find that a reasonable jury could infer that Ovella acted with malice by recklessly initiating the federal action against the Donaldsons individually without conducting any pre-suit investigation regarding the swaying of his home. *See Brown*, 653 F.2d at 199. As such, we find that the Donaldsons produced significant probative evidence of a genuine issue for trial regarding probable cause and malice. *Price v. Purdue Pharm. Co.*, 920 So. 2d 479, 485 (¶16) (Miss. 2006).

## CONCLUSION

¶32. Reviewing the record anew, this Court finds that genuine disputes of facts material to the outcome of this case clearly exist and should be left to resolution by the factfinder. After considering the evidence in the light most favorable to the Donaldsons, we find that the circuit court erred in granting Ovella's motion for summary judgment on procedural

18

grounds, as well as in its findings regarding the merits of the Donaldsons' malicious-prosecution claims. Therefore, we must reverse the judgment of the circuit court, and remand the case for further proceedings consistent with the findings of this opinion.

¶33. **THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON AND GREENLEE, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., NOT PARTICIPATING.**